# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **ANTONIO W. SMITH,** | ) | |
| **Petitioner,** | ) | Civil Action No. 7:19CV00016 |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **M. BRECKON, Warden,** | ) | By: Norman K. Moon |
| **Respondent.** | ) | Senior United States District Judge |

Antonio W. Smith, a federal inmate proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which he challenges his sentence imposed by the United States District Court for the Southern District of Georgia ("SDGA") on February 3, 2004. Respondent has moved to dismiss the petition in its entirety, arguing that this court lacks jurisdiction over it (Dkt. No. 10). Smith has responded (Dkt. No. 21), and he also filed two motions to amend his petition and/or response, both of which the court granted. Accordingly, I also have considered the arguments set forth in those supplemental responses (Dkt. Nos. 26, 32), as well as in a document recently submitted by Smith, which has been docketed as "additional evidence" (Dkt. No. 34).

For the reasons discussed in this opinion, I conclude that jurisdiction is lacking over Smith's § 2241 petition and will therefore dismiss it without prejudice.

## I. BACKGROUND

### A.    Procedural History

On November 6, 2003, in the SDGA, Smith pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(d), in case number 3:03-cr-00011, and to Counts 1 and 2 of an indictment originally filed in the District of Connecticut and transferred to the SDGA, case number 3:03-cr-00022. Count 1 of the second indictment charged Smith with aggravated bank

robbery, in violation of 18 U.S.C. § 2113(a) and (d), and Count 2 charged him with possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1).

The sentencing court found that Smith was a career offender under United States Sentencing Guideline ("U.S.S.G.") § 4B1.1, based on his prior Connecticut convictions for the sale of a controlled substance (a controlled substance offense pursuant to § 4B1.2(b)), and three crimes of violence pursuant to § 4B1.2(a): first-degree assault, escape, and first-degree robbery. (Presentence Investigation Report ("PSR") ¶ 35, Dkt. No. 14 (referencing convictions that appear in ¶¶ 39–41, 43).)[1] This resulted in a total offense level of 34; without the career offender enhancement, it would have been a 28. (*Id.*) His criminal history category was a VI, which is what it would have been even without the career offender enhancement. (*Id.* ¶¶ 48–49.) The court sentenced him to a total of 346 months in the custody of the Bureau of Prisons, consisting of 240 months on Count 1 in case number 3:03CR00011, and, in case number 3:03CR00022, 262 months as to Count 1 (to be served concurrently) and 84 months as to Count 2 (to be served consecutively). Each term of imprisonment was the low end of the then-mandatory guideline range.[2] Judgment was entered against Smith on February 10, 2004. He did not appeal.

In February 2005, Smith filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in the SDGA, which that court denied on March 17, 2006. Again, he did not appeal. He later filed an application for leave to file a successive § 2255 motion, which the Eleventh Circuit denied. *In re Smith*, Case No. 13-10118-A (11th Cir. Feb. 4, 2013). Shortly thereafter, he sought relief in the sentencing court through a document called an "Application for Review of

---

[1] Although no sentencing transcript was prepared in the case, the court presumes that the PSR was adopted, at least as to the guideline range and career offender determinations. Neither party argues to the contrary.

[2] "The Guidelines were initially binding on district courts," but in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court "rendered them 'effectively advisory.'" *Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (quoting *Booker*, 543 U.S. at 220, 245 (2005)). I refer to the pre-*Booker* Guidelines as the "mandatory Guidelines."

Sentence." *United States v. Smith*, No. 3:03-cr-00011, ECF No. 74, which challenged his

sentence on a number of grounds, all of which alleged that the sentencing court had erred in its

Guidelines determinations. The court construed as a § 2255 and denied it because Smith had not

obtained authorization from the Eleventh Circuit to file a second or successive motion. *Id.*, ECF

No. 76.

On March 23, 2016, Smith applied again to the Eleventh Circuit for leave to file a second

or successive motion pursuant to § 2255, raising all of the grounds that he raises in his instant

§ 2241 petition, although he provided considerably less argument and authority there. *See*

Application, *In re Smith*, No. 16-12794-J (11th Cir. May 23, 2016). The Eleventh Circuit denied

the application. *In re Smith*, No. 16-12794-J (11th Cir. June 20, 2016). In doing so, the Eleventh

Circuit ruled on several issues that are directly implicated by Smith's petition here and will be

discussed in more detail in analyzing Smith's claims.

Smith filed this petition on January 8, 2019. (Dkt. No. 1.)

**B.      Smith's Petition and the Pertinent Sentencing Guidelines**

In general terms, Smith's petition asserts that changes in the law subsequent to his

sentencing mean that he no longer qualifies as a career offender under U.S.S.G. § 4B1.1(a). As

it existed when Smith was sentenced under the 2003 version of the Guidelines, (*see* PSR ¶ 12),

that provision stated:

> A defendant is a career offender if (1) the defendant was at least
> eighteen years old at the time the defendant committed the instant
> offense of conviction; (2) the instant offense of conviction is a
> felony that is either a crime of violence or a controlled substance
> offense; and (3) the defendant has at least two prior felony
> convictions of either a crime of violence or a controlled substance
> offense.

U.S.S.G. § 4B1.1(a). Smith does not contest that he met the first and second of those

requirements. Instead, his petition claims that subsection (3) is no longer satisfied because his

drug conviction is not a "controlled substance offense" under current law and because the other

three convictions are no longer "crimes of violence."

As it existed when Smith was sentenced, U.S.S.G. § 4B1.2(a) defined a crime of violence

as:

> any offense under federal or state law, punishable by imprisonment
> for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of
> physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of
> explosives, or otherwise involves conduct that presents a serious
> potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (2003). Additionally, in the commentary to that provision, application

note 1 stated that the term "crime of violence" includes a number of specific offenses, listing

murder, manslaughter, kidnapping, aggravated assault, and robbery, among others.[3] In both the

Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which has a similar provision, and

§ 4B1.2(a), the language of subsection (1) is known as the "elements clause" or "force clause."[4]

The first half of subsection (2) is called the enumerated clause because it enumerates generic

crimes, and the Eleventh Circuit also has referred to the list of offenses in the commentary as

part of the enumerated clause. *In re Sams*, 830 F.3d 1234, 1241 (11th Cir. 2016). The second

---

[3] Smith contends that the government mistakenly relies on later versions of the Guidelines in contending that "robbery" appeared on an enumerated list of offenses qualifying as crimes of violence, and he posits that the 2003 version did not contain that list. (Dkt. No. 21 at 17.) He is incorrect, although his confusion is perhaps understandable. The list of offenses that includes robbery appears in both the 2003 and 2016 versions of the Guidelines, but appears in the commentary to § 4B1.2 at application note 1, not in the text of the § 4B1.2 itself.

[4] The Fourth and Eleventh Circuits both rely "on precedents addressing whether an offense is a crime of violence under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a violent felony under the ACCA . . . as the two terms are defined in a substantially identical manner." *United States v. Carthorne*, 726 F.3d 503, 511 n.6 (4th Cir. 2013) (internal citations and quotation marks omitted); *accord United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Thus, where appropriate, I rely in this opinion on cases interpreting the ACCA.

half of subsection (2)—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is often referred to as the "residual clause."

Considering all of Smith's filings, and construing them liberally, he asserts three different bases for relief. First, he claims that pursuant to the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which struck down the similar residual clause of the ACCA as unconstitutionally vague, his prior Connecticut convictions for first-degree assault and first-degree robbery are no longer crimes of violence under § 4B1.2. According to him, *Johnson*'s holding applies to the career offender guideline if the Guidelines were mandatory, and thus, the residual clause in § 4B1.2(a)(2) of the mandatory Guidelines is unconstitutional. As a result of eliminating the residual clause, his argument continues, his prior convictions for first-degree assault and first-degree robbery are no longer "crimes of violence" because neither qualifies under the elements/force clause or the enumerated clause of § 4B1.2.

His second claim posits that, pursuant to *Chambers v. United States*, 555 U.S. 122 (2009), his escape conviction is no longer a crime of violence.

In his third claim, he relies on *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), and argues that his Connecticut conviction for sale of a controlled substance is not a "controlled substance offense" under § 4B1.2(b). As part of this discussion, he also cites to the Supreme Court's decisions in *Taylor v. United States*, 495 U.S. 575 (1990), *Descamps v. United States*, 570 U.S. 254 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016).

## II. DISCUSSION

### A.    Requirements for Proceeding Under the Savings Clause and *Wheeler*

Typically, a petitioner challenging the validity of his conviction or sentence must proceed under 28 U.S.C. § 2255 in the district where he was convicted. However, the "savings clause" in

§ 2255 allows a prisoner to challenge the validity of his conviction and/or his sentence by filing a § 2241 petition, if he demonstrates that § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). This provision "is commonly referred to as the 'savings clause' as it arguably saves § 2255 from unconstitutionally suspending habeas corpus." *Lester v. Flournoy*, 909 F.3d 708, 711 (4th Cir. 2018) ("*Lester I*").

In *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), the Fourth Circuit explained that where a petitioner is challenging the legality of his sentence (as opposed to his conviction), § 2255 will be deemed "inadequate or ineffective" only when all of the following four conditions are satisfied:

> (1) At the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;
>
> (2) Subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;
>
> (3) The prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions;[5] and
>
> (4) Due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Wheeler*, 886 F.3d at 429; *see also Lester I*, 909 F.3d at 712. The *Wheeler* court also affirmed that the requirements of the savings clause are jurisdictional. Thus, a § 2241 petitioner relying on the savings clause to challenge his sentence must meet the *Wheeler* test for the district court to have subject-matter jurisdiction over his petition. *Id.* at 423–26.

---

[5] The gatekeeping provisions of § 2255(h) require a prisoner, before filing a "second or successive" § 2255 motion, to receive permission from the court of appeals by showing either "newly discovered evidence" proving he was not guilty of his offense, or that a new, previously unavailable rule of constitutional law made retroactive on collateral review by the Supreme Court entitles him to relief. *Lester I*, 909 F.3d at 710–11 (citing 28 U.S.C. § 2255(h)(1)–(2)).

When addressing a § 2241 petition brought pursuant to the savings clause, courts should apply the procedural law of the circuit where the petition is brought and the substantive law of the circuit of conviction. *Hahn v. Moseley*, 931 F.3d 295, 300–01 (4th Cir. 2019). *Hahn* did not involve a *Wheeler* claim challenging a sentence. And, as to *Wheeler*-type claims, the Fourth Circuit stated—shortly before *Hahn*—that it had "not definitively resolved whether a petitioner sentenced out of circuit must show that his sentence is illegal under the sentencing circuit's law or, [instead,] our circuit's law." *Moss v. Atkinson*, 767 F. App'x 466, 468, n.* (4th Cir. 2019) (addressing a *Wheeler*-type § 2241 petition), *cert. denied*, No. 19-683, 2020 WL 411695 (U.S. Jan. 27, 2020). In *Moss*, the parties agreed that the court should apply the substantive law of the Eleventh Circuit, where the petitioner was convicted. *Id.* Doing so, the *Moss* court concluded that the petitioner could not satisfy the second *Wheeler* requirement because his sentence was still legal under Eleventh Circuit law. *Id.* at 467–68.

Absent a contrary directive from the Fourth Circuit, I will continue to apply the general choice-of-law rule for § 2241s as set forth in *Hahn* and prior cases. In examining Smith's claims, then, I apply the law of the Eleventh Circuit, where Smith was convicted, to substantive questions, including the determination of whether settled law of the circuit changed; I apply the procedural law of the Fourth Circuit. Accordingly, I conclude—and the parties agree—that Smith is entitled to seek relief under the *Wheeler* framework, which is a procedural mechanism that apparently has no analog in the Eleventh Circuit. *See also Lester I*, 909 F.3d at 712 (applying the *Wheeler* test to a § 2241 petitioner convicted within the Eleventh Circuit). To satisfy the four *Wheeler* requirements, however, Smith must rely on changed Supreme Court law or Eleventh Circuit law. *Cf. Hahn*, 931 F.3d at 300–01; *Moss*, 767 F. App'x at 467–68.

Because I apply Eleventh Circuit law to Smith's substantive claims, it is important to detail the Eleventh Circuit's 2016 decision denying Smith permission to file a second or successive motion under § 2255, in which it discussed his career offender status and his claim under *Johnson*. Specifically, the Eleventh Circuit first noted that *Johnson* was inapplicable to Smith because he "was not sentenced under the" ACCA. *In re Smith*, No. 16-12794-J, Order at 6 (11th Cir. June 20, 2016). It then reasoned that "even if *Johnson* invalidated the residual clause in the Sentencing Guidelines' definition of 'crime of violence,' Smith was not sentenced as a career offender based on the residual clause." *Id.* at 7. Instead, his "conviction for sale of a controlled substance qualified as a predicate controlled substance offense." *Id.* And his conviction for "armed robbery categorically qualified as a crime of violence under the Guidelines' elements clause" because it "has as an element the use, attempted use, or threatened use of physical force against another." *Id.* at 7 & n.1 (quoting U.S.S.G. § 4B1.2(a)(1)).

**B.    Smith's Claims for Relief Under *Wheeler***

**1.    *Johnson* Claim**

Respondent's motion to dismiss really only addresses directly Smith's first claim that *Johnson* allows him to use § 2241. As to this claim, Respondent contends that Smith cannot satisfy the second, third, or fourth *Wheeler* conditions. As to his *Johnson* claim, I agree that Smith cannot satisfy the second or third conditions, and my discussion ends there.

Although Smith cites to both *Johnson* and *Beckles v. United States*, 137 S. Ct. 886 (2017), neither case constitutes a change in previously settled substantive law so as to call into question the legality of Smith's sentence. As noted above, *Johnson* struck down as unconstitutional the residual clause in the ACCA, but did not address the substantially identical clause in the career offender guideline. 135 S. Ct. at 257. The *Beckles* Court concluded that

*Johnson*'s reasoning did not extend or in any way invalidate the career offender guideline, at least insofar as a defendant was sentenced under the advisory Guidelines. *Beckles*, 137 S. Ct. at 895. It did not address whether *Johnson*'s reasoning could apply to the mandatory Guidelines. *Id.* at 896 ("We hold only that the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine."). *Beckles*, therefore, did not change any settled law applicable to Smith, as required to satisfy Wheeler's second requirement. *Wheeler*, 886 F.3d at 429 . Most importantly for Smith's claims, neither *Johnson* nor *Beckles* held that the residual clause of the career offender guideline, even when the Guidelines were *mandatory* prior to *Booker*, was unconstitutional or invalid, and *Beckles* held *Johnson* does not apply to the advisory guidelines. Accordingly, neither decision provides any relief to Smith.

Moreover, the Eleventh Circuit has squarely held that *Johnson*'s reasoning does *not* extend to the mandatory Guidelines. *In re Griffin*, 823 F.3d 1350 (11th Cir. 2016). Although Eleventh Circuit judges have questioned its correctness, *Griffin* remains good law in that circuit. *See, e.g.*, *Robinson v. United States*, 773 F. App'x 520, 522 (11th Cir. 2019); *pet. for cert. docketed* (Aug. 6, 2019) (concluding it was bound by *Griffin*).[6] Indeed, the Eleventh Circuit recently denied rehearing *en banc* to reconsider *Griffin*, issuing a lengthy published opinion in favor of that denial, accompanied by two statements in opposition joined by three judges, explaining why they believed *Griffin* was wrongly decided. *Lester v. United States*, 921 F.3d 1306 (11th Cir. 2019) ("*Lester II*"); *id.* at 1318 (Statement of Martin, J.); *id.* at 1328 (Statement of Rosenbaum, J.).

---

[6] As of March 7, 2020, the Supreme Court had not yet acted on Robinson's petition for certiorari, although the docket reflects that it was fully briefed as of December 2019.

Interestingly, the petitioner in the Eleventh Circuit's *Lester II* decision was the same individual to whom the Fourth Circuit granted relief under § 2241 in its own *Lester I* decision, on which Smith relies. In *Lester I*, the Fourth Circuit allowed the petitioner to proceed under § 2241 as to his claim that he had been improperly sentenced as a career offender under the Guidelines when they were mandatory. Standing alone, the fact that the Fourth Circuit granted relief to Lester after the Eleventh Circuit panel had denied it might suggest that relief could also be granted to Smith, despite the Eleventh Circuit's contrary law. But *Lester I* is distinguishable on at least two grounds. First, the Fourth Circuit's *Lester I* decision concluded that Lester was not a career offender because of a *statutory* decision—*Chambers*—and *Chambers* had been applied to Lester's offense by *both* the Fourth and Eleventh Circuits. *See Lester I*, 909 F.3d at 712 ("After the Supreme Court decided *Chambers* in 2009, both the Eleventh and Fourth Circuits ruled that Lester's prior offense is not a crime of violence."). The circumstances here are different. The substantive law of the Eleventh Circuit does not support Smith's claim, as discussed above. In other words, Lester's § 2241 petition did not rely on *Johnson* or grant relief under *Johnson* in express contradiction of Eleventh Circuit law, which is what Smith is asking this court to do. Second, the government *conceded* in *Lester I* that the first three requirements of *Wheeler* were satisfied. *Id.* There is no such concession here. Thus, *Lester* does not entitle Smith to relief.

To be sure, if he had been convicted in a different circuit, Smith might be able to prevail. *Cf. Lester II*, 921 F.3d at 1327–28 (Statement of Martin, J.) (noting that the relief the Eleventh Circuit was denying would have been granted had he been convicted in the Seventh Circuit). But clear Eleventh Circuit law precludes giving him relief. And because neither the Supreme Court nor the Eleventh Circuit has invalidated the residual clause in the mandatory career

offender guideline, Smith has not shown that settled law relevant to his own sentence has changed. Accordingly, neither *Johnson* nor *Beckles* entitles him to relief.[7]

Turning to the third *Wheeler* requirement—that petitioner be "unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions"— Respondent correctly notes that § 2255 relief is not unavailable to Smith because *Johnson* is a rule of constitutional law that applies retroactively on collateral review and thus, if it were otherwise applicable to him, he could seek permission to file a second or successive § 2255, as he in fact did.

Notably, *Wheeler* and *Lester* both involved statutory, not constitutional, decisions. *See id.* at 430 (noting that petitioner was "unable to satisfy the requirements of § 2255(h)(2) because *Simmons* was a statutory decision"); *see also Lester I*, 909 F.3d at 712 (noting that petitioner could not meet § 2255(h)'s gatekeeping provisions because the case on which his claim was based was a "decision of statutory interpretation, not constitutional law"). By contrast, the case that Smith relies on—*Johnson*—is a decision stating a rule of constitutional law. *See Johnson*,

---

[7] Even if Smith had been convicted in the Fourth Circuit, there is no Fourth Circuit law extending *Johnson* to the mandatory career offender guideline, either. *Cf. United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 14 (2018) (discussing issue in context of § 2255(h) and holding that the Supreme Court had not itself extended *Johnson* to the career offender guideline, even for defendants sentenced while the Guidelines were mandatory). Instead, the issue of whether *Johnson* invalidated the residual clause of the pre-*Booker* § 4B1.2 is an "open question" in this circuit, as Respondent notes. (*See* Mot. Dismiss 8 n.4, Dkt. No. 10) ("[T]he question of *Johnson*'s application to the mandatory guidelines regime is an open question."). Respondent references its brief and argument on the issue in *United States v. Dandridge*, No. 16-7573 (4th Cir.), but that case has been held in abeyance pending the Fourth Circuit's decision in *United States v. Rumph*, No. 17-7080 (4th Cir.). *Rumph*, in turn, has been tentatively calendared for argument in May 2020.

Whether *Johnson* will be extended by the Supreme Court to invalidate the residual clause in the *mandatory* Guidelines remains to be seen. But there is a circuit split on the issue, *see Lester II*, 921 F.3d at 1323 (Statement of Martin J.) (noting Seventh Circuit's decision in *Cross v. United States*, 892 F.3d 288, (7th Cir. 2008), which contradicted Eleventh Circuit law and held, post-*Beckles*, that the mandatory Guidelines are subject to attack on vagueness grounds)). So it is certainly possible that the issue eventually will be taken up by the Supreme Court. If the Supreme Court were to resolve the issue in Smith's favor and determine that the change was retroactive, he could then again seek permission from the Eleventh Circuit to file a second or successive § 2255.

135 S. Ct. at 2557 (describing residual clause as "unconstitutionally vague"). Therefore, Smith's claim under *Johnson* cannot satisfy the third *Wheeler* requirement, either.

To seek relief under *Johnson*, the proper course of action was to ask the Eleventh Circuit for permission to file a second or successive motion to vacate pursuant to § 2255(h), which Smith did, although unsuccessfully. Further, the mere fact that the Eleventh Circuit denied Smith relief on his claims does not render the § 2255 relief unavailable to him so as satisfy the third *Wheeler* requirement. *See In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000) ("It is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision. . . . A contrary rule would effectively nullify the gatekeeping provisions."). Instead, "a federal prisoner is entitled to pursue a § 2241 motion only when he had no opportunity to utilize a § 2255 motion to take advantage of a change in the applicable law. If, conversely, the prisoner had an unobstructed procedural shot at filing a § 2255 motion to take advantage of a change, a § 2241 motion is unavailable to him, and any otherwise unauthorized habeas motion must be dismissed for lack of jurisdiction." *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (per curiam). Here, Smith had the opportunity; Eleventh Circuit law did not favor him.

### 2. *Chambers* claim

In amendments to his petition that have been permitted by the court, Smith states that he is also relying on *Chambers v. United States*, 555 U.S. 122, (2009), to satisfy the *Wheeler* test. In *Chambers*, the Supreme Court ruled that the generic crime of failing to report to a prison (also called walk-away escape) was not a crime of violence. 555 U.S. at 127–28. I assume, without deciding, that Smith's escape conviction would no longer qualify as a crime of violence after *Chambers*, a point that Respondent does "not concede," but also does not argue, merely

mentioning it in a footnote. (Mot. Dismiss 16-17 n.9.) With that assumption, it is possible that Smith's *Chambers* claim could possibly satisfy the first, second, and third *Wheeler* requirements. Indeed, *Chambers* also was the basis for the relief permitted by the Fourth Circuit in *Lester I.* As the *Lester* court noted, *Chambers* had been deemed to apply retroactively to cases on collateral review and was a "decision of statutory interpretation, not constitutional law." *Lester*, 909 F.3d at 712. Thus, it could not be brought under § 2255(h).

Regardless, to proceed under § 2241, Smith must also establish the fourth *Wheeler* condition: that, due to the retroactive change in law, his sentence "now presents an error sufficiently grave to be deemed a fundamental defect." 886 F.3d at 429. The Fourth Circuit has recently emphasized that the fourth condition can be satisfied by a showing that the defendant was sentenced under the mandatory Guidelines, and that he would no longer be a career offender. *See Lester I*, 909 F.3d at 714 (holding that a defendant's misclassification as a career offender under the mandatory Guidelines constitutes a fundamental defect). It is undisputed that Smith was sentenced under the mandatory Guidelines, so the only remaining question is whether, according to later retroactive precedent, Smith was misclassified as a career offender. *See id.* More specifically, Smith would have to show that, under Eleventh Circuit law, he would no longer be a career offender. Because § 4B1.1 requires only two qualifying convictions, and the sentencing court found that Smith had four, he must show that at least three of the prior four convictions would no longer qualify. This he cannot do. In particular, as I discuss next, he has not pointed to any change in Supreme Court or Eleventh Circuit law that would render three of his convictions non-qualifying offenses.

This issue is somewhat complicated by the fact that it is Smith's *Chambers* claim that could provide an entitlement to § 2241 relief, but he must show that two of his other convictions

are no longer qualifying convictions, in *addition* to his escape offense no longer qualifying as a predicate after *Chambers*. To do that, he would have to rely on *Johnson* and/or *United States v. Savage,* 542 F.3d 959 (2d Cir. 2008), which relates to Smith's prior drug offense. Thus, it raises the question of whether, in establishing a fundamental defect, a § 2241 claimant can rely on legal principles unrelated to the change in law that he relies on to satisfy the *Wheeler* test, an issue not briefed by the parties. The fourth *Wheeler* requirement demands a *causal* link between the changed law and fundamental defect and so would appear to answer that question in the negative. *See* 886 F.3d at 429 (requiring a showing that "due to this retroactive change," the sentence is fundamentally defective). That is, based on a strict reading of *Wheeler*, the only conviction that the court may re-examine is the escape conviction possibly affected by *Chambers*. Respondent has not directly made this argument, however, and instead has addressed the continuing validity of Smith's other convictions, so I also will review Smith's other convictions. That is, I look generally to see whether his other convictions would qualify under current law as either a controlled substance offense or crime of violence under § 4B1.2.

A transcript from Smith's sentencing has never been prepared, and thus it is unclear from the PSR the specific clause of § 4B1.2 that the district court relied for any of his crimes of violence, which is unsurprising for the time—more than a decade before *Johnson*. But Respondent contends that both Smith's first-degree assault and first-degree robbery convictions remain proper predicate convictions under the career offender guideline, even without the residual clause, because both qualify under the force clause and because his robbery is an enumerated offense under § 4B1.2's commentary. I agree that Smith has not cited to any changed law in the Supreme Court or the Eleventh Circuit to show that his robbery conviction does not satisfy the force clause of § 4B1.2, but I am less certain that his assault conviction

would remain a crime of violence under Eleventh Circuit law, absent the residual clause.  I

address each one briefly.

**a.  First-Degree Robbery**

Turning first to the robbery, Smith was convicted of committing armed robbery, which is

also known as first-degree robbery, in violation of Connecticut General Statute § 53a-134(a)(4).[8]

Both when Smith was convicted in 1998 and now, that provision reads:

> (a) A person is guilty of robbery in the first degree when, in the
> course of the commission of the crime of robbery as defined in
> section 53a-133 or of immediate flight therefrom, he or another
> participant in the crime: . . . (4) displays or threatens the use of
> what he represents by his words or conduct to be a pistol, revolver,
> rifle, shotgun, machine gun or other firearm, except that in any
> prosecution under this subdivision, it is an affirmative defense that
> such pistol, revolver, rifle, shotgun, machine gun or other firearm
> was not a weapon from which a shot could be discharged. Nothing
> contained in this subdivision shall constitute a defense to a
> prosecution for, or preclude a conviction of, robbery in the second
> degree, robbery in the third degree or any other crime.

Conn. Gen. Stat. § 53a-134.

Connecticut first-degree robbery requires, at a minimum, a robbery under Connecticut

law, which a person commits when,

> in the course of committing a larceny, he uses or threatens the
> immediate use of physical force upon another person for the
> purpose of: (1) Preventing or overcoming resistance to the taking
> of the property or to the retention thereof immediately after the
> taking; or (2) compelling the owner of such property or another
> person to deliver up the property or to engage in other conduct
> which aids in the commission of the larceny.

Conn. Gen. Stat. § 53a-133.

---

[8]  The parties agree—and the underlying criminal judgment make clear—that he was convicted under this
particular subsection of the statute.  (*See* Dkt. No. 1 at 39, 42.)  Thus, I need only determine whether Conn. Gen.
Stat. § 53a-134(a)(4) is a crime of violence.  I need not consider the other subsections of the statute.

As noted, the Eleventh Circuit expressly concluded—in ruling on Smith's application to file a section § 2255—that "armed robbery categorically qualified as a crime of violence under the Guidelines' elements clause." *In re Smith*, No. 16-12794-J, Order at 7 (11th Cir. June 20, 2016). It has since reiterated that Connecticut robbery falls under the elements/force clause. *Prutting v. United States*, 723 F. App'x 886, 888 (11th Cir. 2018) (holding, in context of ACCA, that "the Connecticut robbery statute[, Conn. Gen. Stat. § 53a-133,] plainly requires 'the use of physical force upon another person'"); *accord Castillo v. United States*, No. 8:07-CR-237-T-24TBM, 2017 WL 700617, at *2 (M.D. Fla. Feb. 22, 2017) ("Petitioner's . . . Connecticut conviction for robbery in the first degree was a crime of violence under U.S.S.G. § 4B1.2(a)(1), the elements clause, because it required the use or threatened use of force."). *See also United States v. Sanchez*, 940 F.3d 526, 532 (11th Cir. 2019) (addressing a similar New York offense and "readily conclud[ing] that New York first degree robbery, which requires the defendant to 'forcibly steal,' that is to 'use[] or threaten[] the immediate use of physical force upon' the victim during the larceny" satisfied the ACCA's elements clause).

This conclusion is also consistent with the Second Circuit's decision in *United States v. Bordeaux*, 886 F.3d 189 (2d Cir. 2018). There, the Second Circuit held that "first-degree robbery in violation of Connecticut General Statutes section 53a-134(a)(4) qualifies as a 'violent felony' under the elements clause of the ACCA." 886 F.3d at 198. The *Bordeaux* court explained that the statute satisfied both requirements of the "elements clause: intent and violent force." 886 F.3d at 194.

As to intent, that was satisfied by the incorporation of Connecticut's generic definition of robbery, which requires the perpetrator to use or threaten to use force "for the purpose" of accomplishing one of the two listed objectives and not "merely negligently." *Id.* As to "violent

force," that was satisfied by subsection (4)'s requirement that the perpetrator either "threaten[]
the use" of a firearm or "display[]" a firearm." *Id.* The *Bordeaux* court reasoned that "even a
mere threat to use a firearm that one does not in fact have still qualifies as the "threatened use of
physical force" within the meaning of the elements clause. *Id.*; *see also Wood v. Barr*, 941 F.3d
628, 630 (2d Cir. 2019) ("We adopt the rationale set forth in *Bordeaux* and hold that Connecticut
first-degree robbery is a crime of violence as defined in 18 U.S.C. § 16(a).").[9]

Critically, Smith cites to no cases, post-*Johnson* or otherwise, where a Connecticut
robbery conviction was determined not to be a crime of violence under either the ACCA or the
career offender guideline. Instead, Smith relies on *Wiggan v. United States*, No. 3:15-cv-447,
2016 WL 4179838 (D. Conn. Aug. 5, 2016), in which a district court granted a defendant's
§ 2255 motion, vacated his sentence, and ordered resentencing, after concluding that *Johnson*
meant that he was no longer an armed career criminal under the ACCA. But the *Wiggan* court
granted relief because at sentencing, the court had concluded that the petitioner's prior
conviction for assault on a peace officer qualified as a predicate offense under the residual
clause, and after *Johnson*, it no longer qualified. 2016 WL 4179838, at *10. That court also
expressly held, though—relying on the Second Circuit's ruling in Wiggan's direct appeal—that
his two first-degree "robbery convictions qualify as violent felonies" under the elements clause
of the ACCA. *Id.* at *8–10. Thus, *Wiggan* does not support Smith's argument that his first-
degree robbery conviction is no longer a crime of violence after *Johnson*.

---

[9] The Fourth Circuit, too, in an unpublished decision prior to *Johnson*, held that a Connecticut first-degree
robbery conviction qualified as an ACCA predicate under the force clause. *United States v. Bennerman*, 585 F.
App'x 127, 128 (4th Cir. 2014) ("*Bennerman I*"); *but see United States v. Bennerman*, 785 F. App'x 958 (4th Cir.
2019) (holding that the ruling on direct appeal in *Bennerman I*, because it was prior to *Johnson*, did not preclude a
contrary finding in the context of a post-*Johnson* § 2255 motion and remanding to the district court to address
whether Connecticut first-degree robbery satisfies the force clause of the ACCA).

In the absence of any contrary Eleventh Circuit law regarding Conn. Gen. Stat. § 53a-134(a)(4), I conclude that Smith's first-degree robbery is a crime of violence under the elements/force clause.

Respondent argues that Smith's robbery conviction also qualifies because "robbery" is listed in the commentary to § 4B1.2 as an example of a crime of violence. While I do not find it necessary to rely on the commentary because the offense qualifies under the elements/force clause, I note that Eleventh Circuit law favors Respondent's argument. Specifically, the Eleventh Circuit has held, in another post-*Johnson* case involving a defendant who had been sentenced under the mandatory Guidelines, that California robbery convictions "categorically count as crimes of violence under the Guidelines' enumerated crimes clause," relying on the Guidelines' commentary that states that a "crime of violence" includes, *inter alia*, "robbery." *In re Sams*, 830 F.3d 1234, 1241 (11th Cir. 2016); *see also Denson v. United States*, 804 F.3d 1339, 1342–43 (11th Cir. 2015) (holding that commentary to § 4B1.2 is authoritative and binding). *But see United States v. Rollins*, 836 F.3d 737 (7th Cir. 2017) (en banc) (holding that the list of enumerated offenses in the application notes is valid only as an interpretation of the residual clause, and if the residual clause is invalid, that list no longer has legal force).

For the foregoing reasons, Smith's Connecticut first-degree robbery conviction is still a qualifying conviction under Eleventh Circuit law. Thus, it constitutes one of the two convictions necessary to show Smith is still properly classified as a career offender.[10]

---

[10] In one of his supplemental filings, Smith argues that conspiracy to commit first-degree robbery is not a crime of violence (Dkt. No. 21 at 15–16), but even if true, that is irrelevant. Although he was charged with conspiracy, that charge was nolle prossed; he was convicted of first-degree robbery. (PSR ¶ 43; Pet. at 40–41 (documents showing conspiracy charge nolle prossed).)

### b. First-Degree Assault

Respondent contends that Smith's Connecticut conviction for first-degree assault also is a crime of violence, and points to the Second Circuit's decision in *Villanueva v. United States*, 893 F.3d 123, 128 (2d Cir. 2018), which held that first-degree Connecticut assault was a crime of violence. But *Villanueva* involved only a specific subsection of that statute: Conn. Gen. Stat. § 53a-59(a)(1), which requires that a person, "[w]ith intent to cause serious physical injury to another person, . . . causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." 893 F.3d at 124. In 1989, when Smith was convicted of the assault, there were two other ways in which the assault statute could be violated. Conn. Gen. Stat. § 53a-59(a)(2)–(3) (1989). (There are now four other ways. *See id.* § 53a-59(a)(2)–(5) (2020).)

Smith rightly points out that we do not know—and cannot know, given the destruction of all relevant documents—under which section of the first-degree assault statute he was convicted. Smith PSR's does not specify the specific statute of conviction for his assault conviction, (PSR ¶ 39), and although Smith himself at one point identified his conviction as being under Conn. Gen. Stat. § 53a-59(a)(1) (Dkt. No. 21 at 24), no documents are available now to confirm that, nor were they available at the time he was sentenced.[11] (*See id.*; PSR ¶ 39.)

Notably, though, subsection (a)(3) of the first-degree assault statute requires only that the defendant, "under circumstances evincing an extreme indifference to human life, recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious

---

[11] In a more recent submission, moreover, Smith attempts to retract that assertion. He states that he erroneously included subsection (a)(1) when discussing the statute of conviction for his assault charge, but is "without any legal/judicial documentation" to support that he was convicted under subsection (a)(1). (Dkt. No. 32 at 2–3.) He supports his most recent assertion with various documents showing court responses to his attempts to obtain documentation about this prior conviction. Respondent has not presented anything to show under which subsection of § 53a-59(a) Smith was convicted.

physical injury to another person." § 53a-59(a)(3) (1989). Based on current Eleventh Circuit law, it is unlikely that this subsection qualifies as a violent felony under the elements/force clause, as I explain next.

The Eleventh Circuit has held the generic offense of "aggravated assault" involves "a criminal assault accompanied by the aggravating factors of either the intent to cause serious bodily injury to the victim or the use of a deadly weapon." *United States v. Palomino Garcia*, 606 F.3d 1317, 1332 (11th Cir. 2010). There, the court first concluded that, regardless of its label, the Arizona offense at issue did not qualify as an "aggravated assault" as set forth in the Guidelines commentary to U.S.S.G. § 2L1.2, because the particular offense was "not consistent with the generic offense of aggravated assault." *Id.* at 1334 n.14.[12] It expressly declined to consider whether "the generic offense of aggravated assault requires a mental state greater than mere recklessness" for purposes of falling within the listed offenses in the commentary. *Id.*

But in looking at the elements clause, the court went on to agree with many other circuits in concluding that an assault offense that could be violated by reckless, rather than intentional, conduct (and does not involve the use of a deadly weapon) does not qualify as a crime of violence under the elements clause. *Id.* at 1336.

Returning to subsection (3) of the Connecticut assault statute, it is noteworthy that it does not require that the perpetrator *intend* to cause serious bodily injury to the victim nor does it require the use of a deadly weapon. *See* § 53a-59(a)(3). Thus, if the statute is not divisible, then categorical approach would lead to the conclusion, based on *Palomino Garcia*, that it is not a crime of violence under the force clause. Moreover, even if the statute were divisible such that

---

[12] *Palomino Garcia* was decided on May 21, 2010. Ten days earlier, an unpublished decision concluded that Arizona's aggravated assault offense was a crime of violence under U.S.S.G. § 2L.2(b)(1)(A)(ii) because it is one of the offenses—"aggravated assault"—listed in the commentary to that guideline. *United States v. Loaeza-Montes*, 378 F. App'x 967, 970 (11th Cir. 2010).

the modified categorical approach and resort to certain *Shepard*-approved documents could be used to determine under which subsection Smith was convicted, there are no such documents.[13] Accordingly, I am not certain whether, without resorting to the residual clause, Smith's aggravated assault conviction would still qualify as a "crime of violence" under the force clause, although it appears that it might not.

Nonetheless, because the Eleventh Circuit would still allow Smith's assault conviction to rest on the residual clause, even after *Johnson*, he cannot show that it is no longer a qualifying conviction. *See In re Griffin*, 823 F.3d 1350 (11th Cir. 2016) (holding the residual clause in the mandatory Guidelines remains valid after *Johnson*); *Robinson*, 773 F. App'x at 520, 522 (11th Cir. 2019); *pet. for cert. docketed* (Aug. 6, 2019) (noting *Griffin* remains binding in the circuit). It is plain that, even a conviction under subsection (3) of the first-degree assault statute would satisfy the residual clause because it "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2. That is, it requires conduct that both "creates a risk of death to another person" and "causes physical injury." § 53a-59(a)(3). Under Eleventh Circuit law as it currently stands, then, Smith's assault conviction is still a qualifying crime of violence, based on the residual clause.[14]

---

[13] *See Descamps v. United States*, 570 U.S. 254, 262 (2013) (explaining the modified categorical approach and the resort to the types of documents approved in *Shepard v. United States*, 544 U.S. 13 (2005)).

[14] Smith also cites to *United States v. Torres-Miguel*, and appears to be relying on that case's distinction "between a use of force and a result of injury." 701 F.3d 165, 169 (4th Cir. 2012). (*See* Dkt. No. 21 at 21–24.) But *Torres-Miguel*'s distinction between direct and indirect force is no longer good law. *See United States v. Covington*, 880 F.3d 129, 134 (4th Cir. 2018) ("[T]his Court has confirmed and reaffirmed in several decisions that the direct versus indirect use of force distinction articulated in *Torres-Miguel* has been abrogated by [*United States v. Castleman*, 572 U.S. 157 (2014).]").

### c. Sale of Controlled Substance

In light of my conclusions regarding Smith's robbery and assault convictions, which give him the two necessary qualifying convictions, it is not strictly necessary to address Smith's Connecticut conviction for the sale of a controlled substance, in violation of Conn. Gen. Stat. § 21a-277(b).  Nonetheless, as Smith has raised substantial questions regarding *Johnson*'s applicability and considering the concerns I have identified as to the assault conviction, I will do so.  Section 21a-227(b) applies to controlled substances other than narcotics or hallucinogenic substances (which are covered by subsection a), and states that "[n]o person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person" any such substance.  *Id.*

Smith, relying on *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), asserts that his Connecticut conviction for sale of a controlled substance offense is no longer a qualifying conviction under § 4B1.2(b), because it criminalizes a mere offer to sell drugs.[15]  In *Savage*, the Second Circuit held that an offense that criminalizes a mere offer to sell drugs was not a "controlled substance offense" under the Guidelines.  542 F.3d at 965; *see also United States v. Johnson*, 945 F.3d 174, 182 (4th Cir. 2019) (discussing *Savage* and decisions from the Fifth and Tenth Circuits that have found state offenses did not amount to controlled substance offenses under the career offender guidelines where the state statute at issue expressly criminalized an

---

[15]  As noted, subsection (a) of § 21a-277 applies to narcotic or hallucinogenic substances and subsection (b) applies to controlled substances other than those two types. Both subsections, though, include a list of prohibited conduct that includes "offering" the substance to another person.  It is not clear whether either subsection is divisible so as to allow use of the modified categorical approach in determining whether a prior offense qualifies as a "controlled substance offense."  *See Parker v. Hazlewood*, No. 17-CV-484-LM, 2019 WL 1748150, at *5 & n.7 (D.N.H. Mar. 19, 2019) (collecting cases holding § 21a-277(a) or (b) are divisible and others saying they are not). Because I rest my decision on other grounds, I do not address this issue.

offer to sell drugs); *United States v. Epps*, 322 F. Supp. 3d 299, 306 (D. Conn. 2018) (holding conviction under § 21a-277(a) does not qualify as a "controlled substance offense").

Regardless of the out-of-circuit authority, though, and as with his robbery conviction, the Eleventh Circuit has already addressed and expressly rejected the same argument he raises here as to why it is not a qualifying conviction—in Smith's case. Admittedly, the appellate court's statement to that effect cited nothing in support and was arguably dicta, as it was an alternative holding. Nonetheless, the Eleventh Circuit's statement—in Smith's case—that his prior conviction is a controlled substance offense is significant. The law of the case doctrine may not be strictly applicable, but it certainly seems that Smith has had his chance to seek relief on that issue and lost. "A federal prisoner is entitled to pursue a § 2241 motion only when he had no opportunity to utilize a § 2255 motion to take advantage of a change in the applicable law. If, conversely, the prisoner had an unobstructed procedural shot at filing a § 2255 motion to take advantage of a change, a § 2241 motion is unavailable to him, and any otherwise unauthorized habeas motion must be dismissed for lack of jurisdiction." *See Rice*, 617 F.3d at 807 (reasoning that use of § 2241 is appropriate "only when [the petitioner] had no opportunity to utilize a § 2255 motion to take advantage of a change in the applicable law").

Just as importantly, *Savage* is not the governing law as to whether or not the conviction remains a qualifying offense. Smith has not pointed to any *Eleventh Circuit* law that follows *Savage* or makes its principles retroactive. Thus, there is an absence of authoritative law from the Eleventh Circuit saying that this type of conviction would no longer be considered a controlled substance offense. *Cf. Mims v. United States*, No. 1:14-CR-0081-SLB-JHE, 2017 WL 2378085, at *7 (N.D. Ala. June 1, 2017), *aff'd on different grounds*, 758 F. App'x 890 (11th Cir. 2019) (noting the Fifth Circuit's decisions reaching the same result as *Savage*, but stating that the

court had not found any Eleventh Circuit cases "holding that a conviction based on an offer to sell would not qualify as a serious drug offense" under the ACCA).

Accordingly, I conclude that there has not been any change under Eleventh Circuit law that would render his drug conviction not a "controlled substance offense."

### 3. *Savage* claim

Lastly, I turn to Smith's claim that he may rely on *Savage* (and several Supreme Court cases—*Taylor*, *Descamps*, and *Mathis*—to satisfy the *Wheeler* requirements. To the extent he is attempting to rely on *Savage* to entitle him to seek relief through § 2241,[16] he cannot do so because that case is from a different circuit.[17] And, as already discussed, the Eleventh Circuit stated in 2016—in Smith's case—that this conviction was a qualifying offense. *See In re Smith*, No. 16-12794-J, Order at 7. Thus, he cannot show a change in law, made retroactive, that renders his sentence illegal.

Smith's reliance on *Descamps* and *Mathis* is similarly misplaced. Neither of those decisions announced a retroactively applicable substantive change in the law. *Brooks v. Bragg*, 735 F. App'x 108, 109 (4th Cir. 2018); *see also Cook v. Warden, USP Lee County*, No. 7:18cv00311, 2019 WL 6221300, at *3 (W.D. Va. Nov. 21, 2019) (holding same and collecting authority). *Taylor* does not entitle him to proceed under § 2241, either: it was decided in 1990, before he was sentenced. Thus, it cannot form the basis for satisfying the second *Wheeler* requirement.

---

[16] To the extent Smith is relying on *Savage* only to show that his conviction should no longer be deemed a controlled substance offense under § 4B1.2, I addressed and rejected that argument in the preceding section.

[17] As the Seventh Circuit explained in *In re Davenport*, a "change in law" that eludes § 2255's gatekeeping provisions is not satisfied simply because there is a "difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated . . . ."), 147 F.3d 605, 612 (7th Cir. 1998) (citing *Cain v. Markley*, 347 F.2d 408, 410 (7th Cir.1965)). "When there is a circuit split, there is no presumption that the law in the circuit that favors the prisoner is correct, and hence there is no basis for supposing him unjustly convicted merely because he happens to have been convicted in the other circuit." *Id.*

### III. CONCLUSION

Having found that Smith does not satisfy the *Wheeler* test for seeking relief under the savings clause of § 2255(e), I conclude that he cannot proceed under § 2241. Accordingly, I will dismiss his petition without prejudice for lack of jurisdiction.

An appropriate order will be entered.

**ENTER**: This <u>13th</u> day of March, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE